1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                  AT TACOMA

10   STEVEN A. TRACY,

11                  Plaintiff,                    CASE NO. 12cv5460-BHS-JRC

12        v.                                      REPORT AND RECOMMENDATION
                                                  ON PLAINTIFF'S COMPLAINT
13   CAROLYN W. COLVIN, Acting
     Commissioner of the Social Security          Noting Date: May 10, 2013
14   Administration,[1]

15                  Defendant.

16

17        This matter has been referred to United States Magistrate Judge J. Richard

18   Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19   4(a)(4), and as authorized by *Mathews, Secretary of  H.E.W. v. Weber*, 423 U.S. 261,

20   271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 17, 19, 20).

21

22   ────────────────

23        [1] Carolyn W. Colvin became the Acting Commissioner of the Social Security
     Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil
24   Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

This matter involves the uncommon circumstance of an individual who already is disabled, but is seeking a different type of Social Security Disability insurance benefits. Therefore, the question is not whether or not plaintiff is disabled currently, as the ALJ's decision acknowledges that plaintiff "currently suffers from longstanding psychotic mental illness" (*see* Tr. 21). The question before the Court is whether or not the ALJ's determination that plaintiff was not disabled before he reached 22 years old in 1975 is without harmful legal error and supported by substantial evidence in the record as a whole.

After considering and reviewing the record, the Court finds that the ALJ failed to evaluate properly plaintiff's social maladjustment disorder. The ALJ failed to recognize or acknowledge that plaintiff was diagnosed with this condition in 1973, while in military service. Therefore, the finding by the ALJ that plaintiff was not diagnosed with this mental impairment until 1978 is not supported by substantial evidence in the record. As a consequence, due to the harmfulness of the error in the evaluation of plaintiff's mental impairment, the ALJ's ultimate conclusion that plaintiff "was not disabled as defined in section 223(d) of the Social Security Act prior to July 27, 1975, the date he attained age 22" cannot stand and must be reversed.

In addition, this improper assessment of plaintiff's mental impairment affected the evaluation of the medical opinions in the record.

For these reasons, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

1

<u>BACKGROUND</u>

2

Plaintiff, STEVEN A. TRACY, was born in 1953 and alleges disability since

3

October 1, 1973, when he was twenty years old (*see* Tr. 74). Plaintiff served in the

4

military from February until September of 1973 (*see* Tr. 280). In 1977, plaintiff filed a

5

disability claim with the Veterans Administration ("VA") (*see id.*).  In the process of

6

responding to plaintiff's appeal of the denial of his claim, the VA provided plaintiff with

7

a Statement of the Case, prepared by a ratings specialist and an adjudication officer (*see*

8

Tr. 278, 282; *see also* Tr. 279-82).

9

This Statement of the Case document includes the following, in the "summary of

10

evidence":

11

12

13

| September 27, 1977 | Received veteran's notice of disagreement with the administrative denial. |

14

15

16

17

18

19

20

21

| October 31, 1977 | A Rating Board carefully reviewed the claim on the basis of all evidence of record including private hospital report of October 11, 1976 submitted by the veteran in support of his claim.  .  .  .  .  On August 24, 1973, the veteran was psychologically evaluated as his commanding officer referred him for a psychiatric evaluation due to the veteran's statement to the effect that he will attempt any method to gain release from the service including suicide. On psychological evaluation the diagnosis of social maladjustment was given by the examiner who advised that the veteran was not motivated to remain in service and consequently, the veteran was administratively separated from the service.  .  .  . |

22

(Tr. 280).

23

24

At the time of plaintiff's February, 2011 Social Security administrative hearing, his 1973 military service was his last gainful employment (*see* Tr. 1080-81). Although plaintiff worked at a grocery store before he entered the military, he did not work afterwards (*see* Tr. 1081, 1084). Plaintiff described one job prior to the military where he was paid four dollars an hour to re-make lead-acid batteries (*see* Tr. 1087-88). Plaintiff testified that he only worked at that job for two months, because at that time, a machine broke, spreading lead dust around, which he inhaled trying to help one of his fellow employees who was trapped (*see id.*). Plaintiff also testified that he worked for two years for a business of his friend shortly after graduation from high school (*see* Tr. 1086-87).

Plaintiff testified that he worked as a data processor while in the military (*see* Tr. 1086). Plaintiff was discharged from the military after approximately eight months in the service (*see* Tr. 280). After plaintiff left the military, he was homeless for a period of time and lived in a shed behind his parents' house for a period of time (*see* Tr. 1081). Subsequently, he was hospitalized for schizophrenia (*id.*). Plaintiff also subsequently submitted a Social Security Application and received a period of disability and disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (*see* Tr. 20, 1081). This finding of disability was based on plaintiff's own earnings record and based on a disability date of onset of October 20, 1978 (*see* Tr. 20).

Plaintiff also applied for VA benefits in 1997 (*see* Tr. 1081). He initially was denied benefits due to a finding that his schizophrenia was not diagnosed while he was in the service in 1973, but instead only was diagnosed later in 1978 (*id.*). After subsequent evaluations, examining doctors appear to have determined that plaintiff's schizophrenia

was present in 1973, to some degree, and he received one hundred percent service

connection for his schizophrenia (*see* Tr. 22-23, 1082). This VA disability pension

became effective January 25, 1999 (*see id.*).

<u>PROCEDURAL HISTORY</u>

On January 30, 2009, plaintiff protectively filed a Social Security application for a

period of disability and child insurance benefits ("CIB") pursuant to 42 U.S.C. §

402(d)(1)(b) (*see* Tr. 18, 27, 29-30, 74-77). Plaintiff's eligibility for CIB in this context

herein requires that he be found disabled prior to the date on which he attained the age of

twenty-two years old. *See* 42 U.S.C. § 402(d)(1)(b). Plaintiff can make two such claims

due to the fully insured status of his mother when she passed away, as well as due to his

father's fully insured status when he retired (*see* Tr. 18, 1082). *See* 42 U.S.C. §

402(d)(1)(b); *see also* 20 C.F.R. § 404.350(a)(5).

Plaintiff's application was denied initially on July 6, 2009 and following

reconsideration on September 22, 2009 (*see* Tr. 18, 31-36). Plaintiff's requested hearing

was held before Administrative Law Judge Eleanor Laws ("the ALJ") on February 15,

2011 (*see* Tr. 1073-91). On March 8, 2011, the ALJ issued a written decision in which

she made two findings: that plaintiff had not engaged in substantial gainful activity since

October 1, 1973, the alleged disability onset date and that prior to the date that plaintiff

attained age 22, "there were no medical signs or laboratory findings to substantiate the

existence of a severe medically determinable impairment" (*see* Tr. 20). Based on the

ALJ's finding regarding the lack of a severe impairment, the ALJ concluded regarding

plaintiff's claim for child disability benefits that plaintiff was not disabled pursuant to the Social Security Act prior to the age of twenty two (*see* Tr. 24; *see also* Tr. 15-24).

On May 11, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 5-8). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision on May 25, 2012 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on August 15, 2012 (*see* ECF Nos. 11, 13). In plaintiff's Opening Brief, plaintiff raises the following issues: (1) whether or not the ALJ erred in failing to find that plaintiff had established at step two a severe medically determinable impairment; (2) whether or not the ALJ erred in her evaluation of the medical opinions offered by examining doctors; and (3) whether or not this matter should be reversed and remanded for a direct award of benefits (*see* Opening Brief, ECF No. 17, p. 2-10).

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-

*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout,*
*supra*, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

1. **The ALJ erred in her evaluation of whether or not plaintiff's social**
   **maladjustment disorder was a severe medically determinable impairment**.

   In considering claims of childhood disability, the administration follows a three-
step sequential evaluation: (1) whether or not the child is working; (2) whether or not the
child has a medically determinable "severe" impairment or combination of impairments;
and (3) whether or not the child's impairment or combination of impairments meets,
medically equals, or functionally equals the severity of an impairment in the listings.  20
C.F.R. § 416.924.

   Step-two of the administration's evaluation process requires the ALJ to determine
whether or not the claimant "has a medically severe impairment or combination of
impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted);
20 C.F.R. § 416.924. "An impairment or combination of impairments can be found 'not
severe' only if the evidence establishes a slight abnormality that has 'no more than a
minimal effect on an individual[']s ability to work. '" *Id.* at 1290 (*quoting Yuckert v.*
*Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-
28)). The step-two analysis is "a *de minimis* screening device to dispose of groundless
claims," when the disability evaluation process ends at step 2. *Smolen, supra,* 80 F.3d at
1290 (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

1       Plaintiff bears the burden to establish by a preponderance of the evidence the

2   existence of a severe impairment that prevented performance of substantial gainful

3   activity and that this impairment lasted for at least twelve continuous months.  *See*

4   *Bowen, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

5   1998) (*citing Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's

6   burden to "'furnish[] such medical and other evidence of the existence thereof as the

7   Secretary may require.'" *Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. §

8   423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)); *see also McCullen*

9   *v. Apfel*, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. §

10  405(g); 20 C.F.R. §§ 404.1505, 404.1520).

11

12      Here, when finding that plaintiff did not suffer from a severe medically

13  determinable impairment during the relevant period of time, the ALJ found that plaintiff

14  "was first diagnosed with a mental disorder and received treatment for mental illness at

15  age 25 when he was hospitalized at UC Irving (sic) Medical Center and Metropolitan

16  State Hospital during 1978" (Tr. 21). Although it is possible that the ALJ meant that

17  plaintiff was diagnosed earlier with a mental disorder and only in 1978 was he both

18  diagnosed and treated, the logical inference from the ALJ's finding is that plaintiff was

19  first diagnosed with a mental disorder in 1978 (*see id.*). This interpretation is buttressed

20  by the fact that nowhere in the ALJ's decision does she ever acknowledge that plaintiff

21  indeed was diagnosed with a mental impairment while in the service in 1973. This

22  finding by the ALJ regarding initial diagnosis in 1978 of a mental impairment is not

23  supported by substantial evidence in the record as a whole, as discussed further below. As

24

1 the ALJ's ultimate determination regarding nondisability is based on this finding, the

2 ALJ's decision must be reversed.

3        The Court already has discussed plaintiff's discharge from the military. *See supra*,

4 BACKGROUND. This discussion included a quotation from the VA's Statement of the

5 Case, including a description of how plaintiff received a psychological examination in

6 August of 1973, following which, "the diagnosis of social maladjustment was given by

7 the examiner" (*see* Tr. 280). Based on a review of the relevant record, the Court

8 concludes that the only logical inference that can be gleaned from this portion of the

9 record is that plaintiff was referred for a psychological (or psychiatric) examination, after

10 which the examiner diagnosed plaintiff with social maladjustment (*see id.*).

11

12        The ALJ's indication that symptoms alone cannot constitute a medically

13 determinable impairment, combined with her findings that plaintiff was first diagnosed

14 with a mental disorder in 1978 and combined with the fact that the ALJ does not

15 acknowledge explicitly anywhere in her written decision that plaintiff was diagnosed

16 with a mental disorder in 1973 while in the military all lead to this Court's conclusion

17 that the ALJ failed to appreciate the significance (or was unaware of) plaintiff's diagnosis

18 following psychological examination.

19        That the ALJ was unaware of plaintiff's diagnosis is suggested by the ALJ's later

20 characterization of plaintiff's 1973 mental impairment diagnosed as social maladjustment

21 disorder, as plaintiff's "drug abuse and strong desire to leave the Army in 1973" (*see* Tr.

22

23 23). However, as the VA Statement of the Case demonstrates that plaintiff was referred

24 for a psychological examination resulting in a diagnosis of social maladjustment, the

ALJ's characterization of plaintiff's mental impairment in 1973 as only drug abuse and a desire to leave the Army, combined with her failure to acknowledge that plaintiff was diagnosed following psychological examination, demonstrate that the ALJ did not evaluate properly plaintiff's diagnosis in 1973 of social maladjustment (*see* Tr. 280).

The ALJ found that plaintiff did not suffer from a severe medically determinable impairment prior to attaining age 22, and therefore the sequential disability evaluation process ended at this step two finding (*see* Tr. 23-24). This finding directly led to the ultimate determination that plaintiff was not disabled pursuant to the Social Security Act prior to attaining age 22 and the denial of his claim for child disability insurance benefits ("CIB") (*see id*.).

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The Court noted multiple instances of the application of these principles. *Id*. (collecting cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id*. (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id*. The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id*. (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts

1   should review cases "'without regard to errors' that do not affect the parties' 'substantial

2   rights.'" *Id.* (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C.

3   § 2111) (codification of the harmless error rule)).

4           Here, the ALJ's error was harmful. First, the ALJ relied on this finding in order to

5   support her ultimate conclusion that plaintiff was not disabled prior to age 22 (*see* Tr. 21-

6   24). Defendant argues that plaintiff failed to demonstrate that he had a colorable claim of

7   mental impairment prior to age 22; that he failed to demonstrate that he had any

8   limitations as a result of any alleged mental impairment; and that any error on the part of

9   the ALJ in failing to find that he suffered from a severe mental impairment prior to the

10  age of 22 therefore was a harmless error (*see* Response, ECF No. 19, pp. 5-7). In doing

11  so, defendant fails to respond to plaintiff's argument that plaintiff's diagnosis of social

12  maladjustment disorder was the basis of his military discharge, evidencing functional

13  limitations. Defendant likewise fails to respond to plaintiff's argument that the VA's

14  conclusion that plaintiff's mental impairment resulted in functional limitations is

15  evidenced by his discharge on the basis of unsuitability because of "apathy (lack of

16  appropriate interest), defective attitudes, and inability to expend effort constructively"

17  (*see* Tr. 295). Defendant also fails to respond to plaintiff's argument that the ALJ erred in

18  failing to acknowledge that plaintiff had been diagnosed with social maladjustment

19  disorder, instead defendant simply re-iterates the ALJ's mistake by arguing as follows:

20

21          The ALJ noted Plaintiff was first diagnosed with a mental disorder and
            received in-patient hospitalization for mental illness in 1978, at age 25
22          (internal citation to Tr. 21). Accordingly, the ALJ properly found there
            were no medical signs or laboratory findings to substantiate the existence
23

24

of a medically determinable impairment beginning prior to Plaintiff's 22nd birthday (internal citation to Tr. 23-24).

(Response, ECF No. 19, p. 6 (internal footnote omitted)). The Court notes that defendant utilized the same sentence structure as the ALJ on this subject, suggesting recognition of the ambiguity of the ALJ's statement, but a failure to address such ambiguity. As the Court has identified previously, the ALJ was ambiguous as to her reasoning, as she may have meant that plaintiff was first diagnosed with a mental disorder prior to 1978, but in 1978 was first diagnosed with a subsequent receipt of treatment; or she may have meant that plaintiff was first diagnosed in 1978 and first received treatment in 1978, which the Court has concluded is the logical inference based on this sentence and the context of the entire ALJ written decision (*see id.*; *see also* Tr. 21).

Despite defendant's arguments, or the lack thereof, the Court concludes that the ALJ's error in failing to acknowledge that plaintiff was diagnosed with a mental impairment in 1973 following psychological examination; her failure to appreciate the significance of such diagnosis following examination; and her resultant failure to find that plaintiff suffered from a medically determinable impairment at step two affected the ultimate determination regarding non-disability and, therefore, were harmful errors (*see* Tr. 23). *See Molina*, *supra*, 674 F.3d at 1115; *see also Keyser v. Comm'r of SSA*, 648 F.3d 721, 725-26 (9th Cir. 2011).

2. **The ALJ failed to evaluate properly the medical opinion evidence**.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

Regarding the weight to be given to a disability determination by the Department of Veterans Affairs ("VA"), the Ninth Circuit has agreed "with the approach of the Fourth, Fifth, and Eleventh Circuits and h[e]ld that in an SSD case an ALJ must ordinarily give great weight to a VA determination of disability . . . because of the marked similarity between these two federal disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citations omitted) (noting various similarities between the programs). The Court further concluded that "the ALJ may give less weight to a VA disability rating if [s]he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (citation omitted).

Defendant admits that an ALJ ordinarily must "give great weight to a VA determination of disability" and admits that the ALJ erred in relying on a difference in inquiries between the Social Security Administration and the VA (*see* Response, ECF No. 19, pp. 8, 10). However, defendant contends that the ALJ provided persuasive, specific and valid reasons for giving no weight to the VA ratings here (*see id.* at pp. 9-10 (*citing* Tr. 22-24)).

When failing to credit fully opinions from plaintiff's examining doctors, the ALJ here relied on findings that both of plaintiff's examining doctors relied in part on plaintiff's subjective reports and that both provided retrospective opinions regarding plaintiff's mental impairments in 1973 (*see* Tr. 23). The Court disagrees with defendant that the ALJ provide persuasive and valid reasons supporting her evaluation of the VA determinations and the medical opinions from plaintiff's examining doctors. Therefore, the Court concludes that the VA determinations and the medical opinions from plaintiff's examining doctors should be evaluated anew following remand of this matter, for the reasons discussed below.

Plaintiff's examining doctors discussed herein, Dr. Edward Colbach, M.D. and Dr. Sean M. Killoran, M.D., both performed mental status examinations and reviewed plaintiff's medical file in 1999 (*see* Tr. 678-80, 690-96). The ALJ rejected opinions from both of these examining doctors "who each opined on a more probable than not basis that the claimant's mental illness began while he was on active duty in 1973" (*see* Tr. 23). The ALJ relied heavily on her finding that "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment . . . ." (*id.*). Although the ALJ was "loath to speculate about the claimant's mental health from 1973 through July 1975 when he attained age 22," that is exactly what the ALJ did here. Unfortunately, the ALJ failed to explain adequately why her own interpretations, rather than those of the doctors, are correct. *See Reddick, supra*, 157 F.3d at 725.

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725; *Smith v. Astrue*, 2012 U.S. Dist. LEXIS 61640 at *11 (W.D. Wash. April 4, 2012) (unpublished opinion) (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)

("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

In this case herein, based on this particular record, the Court also finds persuasive the reasoning of the Sixth Circuit when evaluating an ALJ's discounting of an examining doctor's opinions. *See Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989).

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. . . . In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestation of medical illness. . . . When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Id.* (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F. Supp. 56, 60 (N.D. Cal. 1981))).

When a claimant suffers from a mental impairment, especially one such as social maladjustment disorder which appeared in this case, according to two examining doctors, to be early objective medical signs of plaintiff's schizophrenia, it is especially important to recognize that there may not be a laboratory finding that confirms the presence of the

1   mental disorder. *See id.* Also, mentally impaired individuals commonly do not have the

2   requisite insight into their condition to adequately understand the need for treatment or

3   perhaps even understand that they suffer from an impairment. *See Van Nguyen*, *supra*,

4   100 F.3d at 1465. Mental health professionals are trained to observe patients for signs of

5   their mental health not rendered obvious by the patient's subjective reports and have

6   related expertise in evaluating medical records and opining on medical diagnoses. *See id.*;

7   Trzepacz, *supra*, The Psychiatric Mental Status Examination at 4.

8         Based on the stated reasons, and the relevant record, the Court concludes that the

9   ALJ failed to provide legitimate reasons for her failure to credit fully opinions from

10  plaintiff's examining doctors, Drs. Colbach and Killoran. The ALJ did not adequately

11  explain why her interpretations of the medical record and evidence were more correct

12  than the interpretations of the trained clinicians. As the ALJ relied in part on her rejection

13  of these doctors' opinions that plaintiff's mental illness began while he was in the

14  military in 1973 when she adopted the contrary finding, the error in her evaluation of the

15  doctors' opinions was not harmless (*see* Tr. 23).

16

17      3.  **This matter should be reversed and remanded for further administrative**
18          **proceedings**.

19        Generally when the Social Security Administration does not determine a

20  claimant's application properly, "'the proper course, except in rare circumstances, is

21  to remand to the agency for additional investigation or explanation.'" *Benecke v.*

22  *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth

23

24

Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).  Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292.

The Social Security Regulations set forth a specific procedure for evaluating mental impairments. 20 C.F.R. § 404.1520a(a). This procedure applies "at each level in the administrative review process," including the ALJ's written decision issued after a hearing. *See id.* According to this procedure, the ALJ first must determine whether or not a medically-determinable mental impairment exists by evaluating the relevant symptoms, signs and laboratory findings.   20 C.F.R. § 404.1520a(b)(1); *see also* 20 C.F.R. §§ 404.1508, 404.1528. Here, as discussed above, *see supra*, section 1, the ALJ erroneously failed to find the existence of a medically determinable impairment during the relevant period of time (*see* Tr. 23).

In a case where an Administrative Law Judge found that a claimant had a mental impairment, but that it was not severe, the Ninth Circuit concluded that the ALJ committed legal error by not documenting application of the special procedure required

for evaluating mental impairments. *Keyser v. Comm'r SSA*, 648 F.3d 721, 726 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520a.

Once it is determined that a mental impairment exists, the ALJ must rate the degree of functional limitation resulting from the impairment. 20 C.F.R. § 404.1520a(b)(2). The regulations require the ALJ to include specific findings as to the degree of limitation in activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).  The regulations require that the ALJ rate the degree of functional limitation in the four areas described above.  *Id.* As quoted by the Ninth Circuit, the ALJ's written decision "'*must* incorporate the pertinent findings and conclusions based on the technique,' and '*must* include a specific finding as to the degree of limitation in each of the functional areas.'" *Keyser*, *supra*, 648 F.3d at 725 (*quoting* 20 C.F.R. § 404.1520a(e)(4)) (emphasis added by the Ninth Circuit).

Plaintiff requests that the Court reverse and remand with a direction to award benefits on the basis of the examining doctors' opinions (*see* Opening Brief, ECF No. 17, p. 10). It is true that a new examination of plaintiff now adds little of relevance to the determinations that must be made in this matter. However, even if the doctors' opinions were to be credited as true, it is not clear to the Court that they establish definitively that the ALJ would be required to find that plaintiff was disabled during the relevant period of time. *See Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292). For example, Dr. Killoran indicated that while in the military, plaintiff suffered "the first symptoms of a devastating psychotic disorder which was to handicap the patient for the

rest of his life" (*see* Tr. 696). However, he doesn't indicate to the extent that it was

handicapping plaintiff prior to his reaching the age of 22 (*see id.*). Likewise, he twice

indicated that it was while in the military that plaintiff's illness began, but indicates in the

present tense the degree to which plaintiff is compromised (*see id.*). Dr. Colbach also

appeared to provide a functional assessment in the present tense, assessing plaintiff's

GAF at 40, "with significant mental symptoms" (see Tr. 682). The ALJ may wish to re-

contact these clinicians if possible.

This matter should be reversed and remanded for further proceedings in order to

allow the ALJ to document the use of the special procedure for evaluating mental

impairments for the relevant period of time. *See id.* A medical expert may be necessary to

assist the ALJ in these determinations. In addition, if necessary, the ALJ also will have

proceed to the next step in evaluating plaintiff's claim. *See* 20 C.F.R. § 416.924.

Furthermore, the decision whether to remand a case for additional evidence or

simply to award benefits is within the discretion of the court.  *Swenson v. Sullivan*, 876

F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399

(9th Cir. 1988)).

<u>CONCLUSION</u>

The ALJ did not evaluate properly plaintiff's mental impairments and failed to

appreciate the significance of a diagnosis after a psychological evaluation. The ALJ also

did not evaluate properly the retrospective opinions from examining doctors regarding

plaintiff's mental impairments and their existence in 1973 while plaintiff was in the

military.

1    Based on the stated reasons and the relevant record, the undersigned recommends

2  that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42

3  U.S.C. § 405(g) to the Commissioner for further consideration.  **JUDGMENT** should be

4  for **PLAINTIFF** and the case should be closed.

5    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

6  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R.

7  Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

8  purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

9  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

10  matter for consideration on May 10, 2013, as noted in the caption.

11    Dated this 15th day of April, 2013.

J. Richard Creatura
United States Magistrate Judge